UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


VOL PARKER,

        Petitioner,

                                       CASE NO. 12-15325

v.                                  HONORABLE ARTHUR J. TARNOW

RANDALL HAAS,

        Respondent.

_____/

### OPINION AND ORDER
### GRANTING RESPONDENT'S MOTION FOR SUMMARY
### JUDGMENT AND DISMISSAL OF THE PETITION (Dkt. #16),
### DISMISSING THE AMENDED HABEAS CORPUS PETITION (Dkt. #14),
### DENYING A CERTIFICATE OF APPEALABILITY, BUT
### GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

        This matter has come before the Court on petitioner Vol Parker's amended habeas

corpus petition and respondent Randall Haas's motion for summary judgment and

dismissal of the petition.  The Court agrees with Respondent that the habeas petition is

time-barred.  Accordingly, the Court will grant Respondent's motion and dismiss the

amended petition with prejudice.

## I.  Background

### A.  The Trial, Sentence, and Direct Appeal

        Petitioner and two of his brothers (Darnell Parker and Ray Parker) were charged in

Wayne County, Michigan with six counts of first-degree murder for the deaths of Curtis

*Parker v. Haas*, No. 12-15325

Olden, E.L. McElroy, and Ralph Watson.  Although there were three victims, the

prosecutor maintained that the defendants were guilty of both premeditated murder and

felony murder (murder during the commission of a larceny).  Petitioner was tried jointly

with his two brothers in the former Recorder's Court for the City of Detroit.  Petitioner

and Darnell Parker were tried before one jury; Ray Parker had a separate jury.  The

Michigan Court of Appeals summarized the evidence at trial as follows:

> [T]he prosecution's theory of the case was that the three defendants staged
> a drug transaction in order to rob the three victims of approximately
> $25,000.  Dr. Werner Spitz, the forensic pathologist who supervised the
> autopsies on the three victims, testified that at least three separate weapons
> were used in the murders, a gun and two knives.
>
> Charles Parker, the defendants' brother, was granted immunity in exchange
> for his truthful testimony against each of the three defendants.  He testified
> that Ray and Darnell Parker came into his place of employment at
> approximately 2:00 a.m., within a few hours after the drug transaction was
> supposed to have taken place.  Ray asked Charles whether he could borrow
> Charles' car.  Charles testified [that] Ray wanted the car in order to move
> some dead bodies.  Charles waited for his wife to bring his car.  Then he,
> Ray, his wife and daughter drove to the defendants' mother's house.
> Darnell left the bar and joined Vol who was waiting outside in his cab.  Vol
> and Darnell also drove to [their] mother's house.  The four brothers then
> drove in Charles' car to their brother Lacy Parker's home.  After Vol went
> upstairs, Charles and Ray went into the basement where Charles observed
> three dead bodies.  Ray assisted Charles in loading and disposing of at least
> one of the bodies.  Charles disposed of the others.  After the bodies were
> disposed of, Ray assisted Darnell in cleaning up the blood which had
> accumulated in the basement.  A short time later, Ray asked Charles to hold
> a couple bundles of money which were alleged to have been taken from one
> of the victims.

*Parker v. Haas*, No. 12-15325

*People v. Vol Parker*, No. 114056, pages 3-4 (Mich. Ct. App. July 23, 1990)

(unpublished).  There was additional evidence from

> Detroit Police Officer Danny Saldana [who] testified that he was on routine patrol on April 29, 1988, at approximately 10:55 p.m., when he was flagged by a woman pedestrian who advised him that she had just witnessed a black male abandon a Jaguar automobile in the street.  The driver of the Jaguar immediately entered a cab which had been following the Jaguar before it was abandoned.  The evidence further revealed that Vol was employed as a cab driver and that one of the victims, Curtis Olden, owned a Jaguar.  Moreover, shortly after the murders, Vol was in possession of the money which was alleged to have been taken from one of the victims.  Vol then gave Charles $200 even though he did not owe Charles any money.

*Id*. at 6-7.

On October 20, 1988, Petitioner's jury found him guilty of three counts of premeditated murder and three counts of felony murder.  The trial court sentenced Petitioner to six concurrent terms of life imprisonment without the possibility of parole.

On appeal, Petitioner argued that there was insufficient evidence presented at his preliminary examination and at trial.  The Michigan Court of Appeals disagreed and affirmed Petitioner's three felony murder convictions, but vacated his three convictions and life sentences for premeditated murder.  *See id*. at 9.  Petitioner did not seek leave to appeal in the Michigan Supreme Court.

**B.  The First Motion for Relief from Judgment and Subsequent Appeal**

On October 30, 2009, Petitioner filed a motion for relief from judgment in which he alleged that he was erroneously convicted and was actually innocent of the charged

*Parker v. Haas*, No. 12-15325

crime.  He raised several other claims about the felony complaint, his trial and appellate attorneys, and the prosecutor.  The state trial court summarily dismissed most of the claims, but scheduled an evidentiary hearing to determine the validity of Petitioner's claim that his brother Charles Parker had recanted his trial testimony.

At a hearing on June 24, 2010, Charles Parker testified that, although he signed a paper entitled "Affidavit of Recantation," he told the truth at trial and was "not taking anything back."  The trial court denied Petitioner's post-conviction motion after concluding that Charles Parker had not recanted his trial testimony.

Petitioner appealed the trial court's decision on the basis that he was unable to obtain the trial transcripts.  The Michigan Court of Appeals denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D).  *See People v. Parker*, No. 302022 (Mich. Ct. App. Mar. 18, 2011).  On December 28, 2011, the Michigan Supreme Court denied leave to appeal for the same reason.  *See People v. Parker*, 490 Mich. 967; 806 N.W.2d 313 (2011) (table decision).

## C.  The Initial Habeas Petition, Stay, and Second Motion for Relief from Judgment

On December 4, 2012, Petitioner commenced this action by filing a habeas corpus petition in this Court.  He argued that:  (1) his constitutional rights were being violated because the state trial court lost or destroyed his trial transcript; (2) the state appellate courts refused or failed to properly adjudicate his claims on state collateral review; and

4

*Parker v. Haas*, No. 12-15325

(3) he was entitled to habeas relief as a matter of due process and equal protection of the law.

Petitioner filed a motion for a stay with his habeas petition. He sought to hold his petition in abeyance while he returned to state court and pursued additional state remedies. On May 6, 2013, the Court granted Petitioner's motion for a stay and closed this case for administrative purposes. *See* Order Granting Petitioner's Mot. for a Stay, Dkt. #9.

On August 20, 2013, Petitioner filed his second motion for relief judgment in the state court. He argued in his motion that trial counsel was ineffective for failing to notify him of any plea offers, that the prosecution failed to disclose evidence, and that trial counsel was ineffective for failing to investigate two important witnesses. In his supporting brief, Petitioner raised the same issues that he presented in his first motion for relief from judgment. The trial court denied Petitioner's motion on the basis that Petitioner's claims were previously decided against him and that he had offered no basis for reconsideration.

The Michigan Court of Appeals dismissed Petitioner's subsequent application for leave to appeal for lack of jurisdiction. The Court of Appeals stated that Petitioner had previously filed a motion for relief from judgment and, under Michigan Court Rule 6.502(G), he could not appeal the denial or rejection of a successive motion for relief from judgment. *See People v. Parker*, No. 319131 (Mich. Ct. App. Jan. 15, 2014). On

5

*Parker v. Haas*, No. 12-15325

September 29, 2014, the Michigan Supreme Court likewise denied leave to appeal

because Petitioner's second motion for relief from judgment was prohibited by Rule

6.502(G).  *See People v. Parker*, 497 Mich. 867; 853 N.W.2d 365 (2014) (table decision).

**D.  The Amended Habeas Petition and Responsive Pleading**

On January 6, 2015, Petitioner returned to this Court and moved to amend his

habeas petition.  The Court granted Petitioner's motion and re-opened this case.  *See*

Order Granting Petitioner's Mot. to Amend his Habeas Corpus Pet., Dkt. #13.  Petitioner

subsequently filed his amended petition, raising the following seven claims:  (1) the

original plea offer should be reinstated because he would have accepted the plea were it

not for counsel's erroneous advice; (2) the prosecutor failed to disclose evidence before

trial, and trial counsel was ineffective for failing to investigate and request all exculpatory

evidence; (3) there was insufficient evidence at trial to sustain his felony murder

convictions; (4) the trial court erred when it failed to address each of the issues Petitioner

raised in his 2010 motion for relief from judgment; (5) the trial court erred by failing to

properly evaluate Petitioner's claims under Michigan Court Rule 6.508; (6) he has newly

discovered evidence of actual innocence; and (7) he has shown good cause and actual

prejudice for his failure to raise his issues on appeal.  Respondent argues in his motion

for summary judgment and dismissal of the petition that Petitioner's claims are barred by

the one-year statute of limitations.  Petitioner did not file a reply to Respondent's motion.

*Parker v. Haas*, No. 12-15325

## II.  Analysis

**A.  The Statute of Limitations**

The Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Respondent's motion for summary judgment and dismissal of the habeas petition is based on the statute of limitations set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which governs this case because Petitioner filed his habeas petition in 2012 after AEDPA was enacted. *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997); *Muniz v. Smith*, 647 F.3d 619, 622 (6th Cir. 2011).

AEDPA established a one-year period of limitation for state prisoners to file their federal habeas corpus petitions.  *Wall v. Kholi*, 562 U.S. 545, 550 (2011) (citing 28 U.S.C. § 2244(d)(1)).  The period of limitations ordinarily runs from the latest of four specified dates:

> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

7

*Parker v. Haas*, No. 12-15325

**(D)** the date on which the factual predicate of the claim or claims
presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).  "The limitation period is tolled, however, during the

pendency of 'a properly filed application for State post-conviction or other collateral

review with respect to the pertinent judgment or claim.' "  *Kholi*, 562 U.S. at 550-51

(quoting § 2244(d)(2)).

Petitioner's convictions became final in 1990 when the Michigan Court of

Appeals issued its decision on direct appeal, and Petitioner failed to file an application for

leave to appeal in the Michigan Supreme Court.  AEDPA's statute of limitations,

however, was enacted on April 24, 1996, long after Petitioner's convictions became final.

As a result, he was entitled to a one-year grace period (from April 24, 1996, to April 24,

1997) to file his habeas petition.  *Stokes v. Williams*, 475 F.3d 732, 734 (6th Cir. 2007).

Petitioner did not file his habeas corpus petition until 2012, and even though the

limitations period is tolled while a properly filed post-conviction motion is pending in

state court, 28 U.S.C. § 2244(d)(2), Petitioner filed his first motion for relief from

judgment in June of 2009.  By then, the limitations period had expired.  His motion did

not revive the limitations period or re-start the clock at zero.  *Vroman v. Brigano*, 346

F.3d 598, 602 (6th Cir. 2003) (quoting *Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.

N.Y. 1998)); *Hargrove v. Brigano*, 300 F.3d 717, 718 n.1 (6th Cir. 2002) (noting that a

motion for delayed appeal in state court would not restart the limitation period, nor affect

*Parker v. Haas*, No. 12-15325

the one-year statute of limitations, if the statute of limitations had already run).  The

tolling provision of § 2244(d)(2) "can only serve to pause a clock that has not yet fully

run.  Once the limitations period is expired, collateral petitions can no longer serve to

avoid a statute of limitations."  *Rashid*, 991 F. Supp. at 259.

## B.  Delayed Start

Petitioner claims to have newly discovered evidence, and, under 28 U.S.C. §

2244(d)(1)(D), the limitations period can run from "the date on which the factual

predicate of the claim or claims presented could have been discovered through the

exercise of due diligence."  The Court, however, finds for the following reasons that the

evidence in question could have been discovered sooner.

### 1.  Charles Parker's Affidavit

The first piece of allegedly new evidence is Charles Parker's "Affidavit of

Recantation," which was signed on October 1, 2007, almost nineteen years after

Petitioner's trial.  Charles asserts in his affidavit that he was forced to make a statement

to Detroit detectives on May 6, 1988.  He claims that the police physically abused him,

threatened to charge him with first-degree murder if he did not implicate his brothers, and

threatened to charge his wife.

The circumstances of Charles' interrogation and his motive for cooperating with

the police were brought out at trial when he admitted that the police had arrested his wife

9

*Parker v. Haas*, No. 12-15325

and threatened to prosecute her. (Trial Tr. Vol. III, 236, 239, 247-48, Oct. 19, 1988.) Thus, the substance of Charles' affidavit was known to Petitioner as early as his trial.

Furthermore, Petitioner did not make use of the affidavit until October 30, 2009, when he filed his first motion for relief from judgment, which was based on the affidavit, and he did not file his habeas petition until 2012. Therefore, even if the Court delayed the start of the statute of limitations until October 1, 2007, when Charles signed his affidavit, Petitioner waited more than a year to pursue the matter in either state court or federal court. The Court concludes that Charles' affidavit is not a basis for delaying the start of the limitations period.

### 2. The Statements of Evelyn Ferrell and Daniel Moore

Petitioner also claims to have newly-discovered evidence in the form of witness statements from Evelyn Ferrell and Daniel Moore. Ms. Ferrell informed the police in 1988 that she saw a man abandon a Jaguar car and get in a cab, which was painted yellow and white or red and white. She also states that the cab was not a Checker cab. *See* Amended Pet. for Writ of Habeas Corpus, Ex. B.

Daniel Moore informed the police in 1988 that he saw a body in the trunk of a car in his neighborhood. He claimed that Gary Walker was the driver of the car and that Mr. Walker assisted another man in removing the body from the trunk of the car and dumping the body in the alley. *See* Amended Pet. for Writ of Habeas Corpus, Ex. C.

10

*Parker v. Haas*, No. 12-15325

Neither Mr. Walker, nor Ms. Ferrell, testified at trial, but the prosecutor listed them as potential witnesses on his list of witnesses. *See* Wayne County Prosecutor's Witness List, Dkt. #17-3. Consequently, Petitioner could have discovered their statements with due diligence. The Court therefore declines to delay the start of the limitations period on the basis of Petitioner's discovery of Evelyn Ferrell's and Daniel Moore's statements to the police. The Court proceeds to determine whether the limitations period should be equitably tolled.

## C. Equitable Tolling

AEDPA's limitations period "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). But "a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id*. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749-50 (6th Cir. 2011) (adopting *Holland's* two-part test for determining whether a habeas petitioner is entitled to equitable tolling).

Petitioner clearly has not been diligent in pursuing his rights. After AEDPA was enacted in 1996, he waited more than thirteen years to take any action on his claims, and after Charles Parker signed his "affidavit of recantation," Petitioner waited over two years to file his first motion for relief from judgment claiming actual innocence.

11

*Parker v. Haas*, No. 12-15325

Petitioner also has not shown that some extraordinary circumstance prevented him from filing a timely habeas petition.  Although he claims to have newly-discovered evidence, the evidence could have been discovered earlier with due diligence.  The Court therefore declines to equitably toll the limitations period.

**D.  Actual Innocence**

Petitioner contends that he is entitled to have his claims considered on the merits because he is actually innocent of the crimes for which he was convicted.  The Supreme Court has held that actual innocence, if proved, serves as a gateway through which a habeas petitioner may pass when the impediment to consideration of the merits of a petitioner's constitutional claims is the expiration of the statute of limitations. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013).  The Supreme Court cautioned, however, that "tenable actual-innocence gateway pleas are rare:  '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of . . . new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  *Id*. (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

The evidence against Petitioner at trial was circumstantial, but significant. Petitioner was the brother of Ray Parker, and he was waiting outside while Ray asked Charles Parker for his car to dispose of some dead bodies.  Petitioner subsequently accompanied Ray, Charles, and Darnell Parker to their brother Lacey Parker's house. Petitioner went upstairs when they arrived at Lacey's house while Charles went to the

12

*Parker v. Haas*, No. 12-15325

basement and observed the three dead bodies.  After Charles disposed of the bodies,

Petitioner, Ray, and Darnell each paid Charles a few hundred dollars, presumably for his

help with the bodies.  The number of victims (three), the number of weapons used in the

crime (one gun and at least two knives), and the nature of the victims' wounds (gunshots,

stabbing, and strangulation) suggested that three people were involved in the murders.

According to Petitioner, Charles Parker testified at the state evidentiary hearing

that Petitioner did not take part in the offense.  Charles did testify at the hearing that he

did not tell the police what Petitioner did to facilitate the crimes because he did not know

what each brother had done.  (Mot. for New Trial Tr., 14, 16, June 24, 2010).  But

Charles maintained that he was not "taking back" or recanting his trial testimony.  *Id*. at

17-18.

Petitioner has failed to present the Court with any new and credible evidence of

actual innocence.  Therefore, his claim of actual innocence is not a tenable basis for

consideration of the substantive merits of his constitutional claims.

### III.  Conclusion

Petitioner filed his habeas corpus petition years after the one-year statute of

limitations expired, and, for the reasons given above, he is not entitled to equitable tolling

of the limitations period or a delayed start to the limitations period.  He also has not

alleged a credible claim of actual innocence.  Respondent therefore is entitled to

judgment as a matter of law.  His Motion for Summary Judgment and Dismissal of the

13

*Parker v. Haas*, No. 12-15325

Petition (Dkt. #16) is **GRANTED**, and the Amended Petition for Writ of Habeas Corpus

(Dkt. #14) is **DISMISSED** with prejudice.

The Court **DENIES** a certificate of appealability because reasonable jurists would

not debate the correctness of the Court's procedural ruling, nor "find it debatable whether

the petition states a valid claim of the denial of a constitutional right." *Slack v.

McDaniel*, 529 U.S. 473, 484 (2000). Petitioner nevertheless may proceed *in forma

pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. §

1915(a)(3).

S/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: January 14, 2016

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record
on January 14, 2016, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Assistant

14